Welsbach Street Illuminating Company v. Commissioner.
Welsbach St. Illuminating Co. v. Commissioner
Docket No. 102430.
United States Tax Court
1942 Tax Ct. Memo LEXIS 11; 1 T.C.M. (CCH) 309; T.C.M. (RIA) 42682; 12/26/1942
*11 Francis H. Scheetz, Esq., 1335 Land Title Bldg., Philadelphia, Pa., John M. Thompson, Esq., 1335 Land Title Bldg., Philadelphia, Pa., Albert S. Lisenby, Esq., and Hugh Satterlee, Esq., for the petitioner. Brooks Fullerton, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent determined deficiencies in income taxes of $34,521.30 for 1936 and $21,761.03 for 1937. The entire deficiency for each year is contested by petitioner which also claims an overpayment of $103.40 for 1936. The issue for each year is whether, in computing surtax on undistributed profits, petitioner is entitled to a credit under section 26(c)(1) or (2) of the Revenue Act of 1936. [1]
*12 Findings of Fact Most of the facts are stipulated but some additional facts were established by testimony at the hearing. We include the stipulated facts by reference but set out hereinafter only such of them as are necessary to an understanding of the contentions, together with additional facts found upon the evidence submitted. Petitioner is a Delaware corporation doing business in Pennsylvania and with its principal office in Philadelphia. Its returns for the taxable years involved were filed with the collector for the First Collection District of Pennsylvania. From 1928 to December 24, 1936, all of petitioner's outstanding bonds of an original issue of $2,400,000 were owned by The American Gas Company, (hereinafter referred to as "American"). This company had ceased activities in 1927 except as a holding company. From that year to 1936 practically all of its outstanding stock was owned by United Gas Improvement Company, (hereinafter referred to as "United"). In 1936, the small outstanding balance of American stock was acquired by United and, in December of that year, it was the owner of all the issued stock of American. Petitioner's bonds, hereinbefore referred to, were issued *13 under a trust indenture covering all of its assets and properties by the terms of which it was obligated to make yearly payments to the trustee for purposes of a sinking fund in the sum of $106,000, payable semi-annually in equal installments on July 1 and January 1, and to make additional payments into that sinking fund for each calendar year in which the combined net earnings of the petitioner and its subsidiaries exceeded $100,000. A large portion of petitioner's assets consisted of stock in certain wholly owned subsidiary companies. Petitioner was indebted to the Chase National Bank of New York in the sum of $250,000 representing borrowings for the purpose of meeting current expenses. In January 1933 the bank demanded payment of this indebtedness. Petitioner thereupon proceeded to make arrangements to meet the situation. It entered into negotiations with American for modification of the conditions of its trust indenture to permit the deferment of the sinking fund payments, due in 1934, and for the release of certain of its assets from the trust in order that they might be pledged with the bank as security in obtaining an extension of the loan. These negotiations were carried *14 on with the officers of American who were also officers and directors of United, and the several agreements resulting therefrom were prepared under the direction of the General Counsel for United. The arrangement ultimately effected was that American agreed to a deferment of the sinking fund payments for 1934 and the trust indenture covering the bond issue was modified. The original provision for payments to the sinking fund was replaced by a new provision requiring payments of equal installments in April and October of each year in an amount equal to one-half of the combined net earnings of petitioner and its subsidiaries for the preceding calendar year, or if such combined net earnings did not exceed $150,000 and if one-half thereof should be less than proper depreciation and obsolescence charges of petitioner and its subsidiaries for such preceding calendar year, then the payment should be equal to the balance of the entire amount of such combined net earnings remaining after deducting therefrom the amount of proper depreciation and obsolescence charges or deducting therefrom $75,000, whichever was less. The amended trust indenture provided a method for computing combined net earnings *15 and provided that this computation be made and submitted to the trustee on or before April 1 of the year following that for which it was made. In addition, certain specified assets were released from the lien of the trust indenture. As a condition to and in consideration for the deferment by American of the current sinking fund payments and the modification of the trust indenture, petitioner was required to and did enter a contract restricting its payment of dividends and increasing its officers' salaries. This agreement was prepared under the direction of the General Counsel of United, acting for American and was embodied in a letter addressed to American dated January 5, 1934, delivered to American and reading as follows: 261 North Broad Street Philadelphia, Penna., January 5, 1934. The American Gas Company, 1401 Arch Street, Philadelphia, Pa. Gentlemen: In consideration of the consent of your Company, as the holder of all of this Company's outstanding Collateral Trust Six Per Cent, Fifteen Year Sinking Fund Gold Bonds, to the execution and delivery of the Indenture dated as of December 29, 1933, supplemental to the Indenture dated as of January 1, 1923, from our Company to *16 Fidelity Trust Company securing said bonds, we agree that so long as your Company shall hold any of said bonds that our Company will not, without the prior written consent of your Company, pay any dividends on its capital stock or increase the salaries of its executive officers, either as officers of our Company or of its Subsidiary Companies, above the respective amounts of such salaries on January 1, 1934, as set forth in a list which we have delivered to Mr. W. W. Bodine, Vice-President of your Company, and that the proper amount of depreciation and obsolescence charges to be set aside by our Company and its Subsidiary Companies under the provisions of Section 2 of Article Two of said Indenture dated as of January 1, 1923, as amended by said Supplemental Indenture, shall be determined annually by agreement with your Company. Yours very truly, WELSBACH STREET ILLUMINATING COMPANY, By, /s/ Eugene S. Newbold President. On January 5, 1934, petitioner's directors authorized the execution of the supplemental modified trust indenture and the signing of the above letter by petitioner's president on behalf of petitioner. On December 8, 1936, the stockholders of American voted for its *17 dissolution. Thereafter, on December 24, 1936, all of its assets, including all of petitioner's bonds then outstanding and in the amount of $926,000, were transferred and distributed to United, the sole stockholder of American. Opinion There is no dispute as to the facts. The sole issue is one of law. Petitioner contends that in neither of the taxable years could it have paid a dividend without violating the terms of its written contract of January 5, 1934, with American, under which it obligated itself to pay no dividends so long as any of its bonds were owned by that company without first obtaining the consent of that company in writing. The relevant facts are that American, prior to the close of the year 1936, transferred all of these bonds to United. Petitioner, however, insists that its agreement constituted a warranty of security for the payment of the bonds which passed to and was enforceable by an assignee of the bond indebtedness. We do not agree. The rule is clear that security for and a guarantee of part of an indebtedness generally passes upon assignment of the debt and may be enforced by the assignee thereof. But this rule is subject to the exception that where the *18 agreement or guarantee runs specifically to the present holder of the indebtedness in his individual capacity it is subject to enforcement only by him. ; ; ; . Cf. ; . The language of the agreement of January 5, 1934 expresses only one meaning to us. This is that the restriction upon payment of dividends was to be effective only for the period during which American should hold any of the bonds. The language is not ambiguous. The statement is that "* * * so long as your Company shall hold any of said bonds that our Company will not, without the prior written consent of your Company, pay any dividends on its capital stock * * *." This is an agreement to be bound only while a certain condition exists. We think that the conveyance of the bonds manifestly terminated that condition and so relieved petitioner *19 from the obligation imposed by the agreement. Petitioner argues also that American was a wholly owned subsidiary of United and that the agreement of petitioner was intended to run not only to American, but, to United. This, it is said, is shown by the fact that subsequent to the transfer of the bonds by American to United, although it was the desire of its officers, if possible, to make such payment, petitioner treated the restriction as still in effect and therefore paid no dividends because it had sounded out the officers of United as to whether they would permit dividend payments and were given to understand that such permission would not be granted. In our judgment, even were it conceded that petitioner considered itself bound after the conveyance of the bonds by American it would not alter the situation if petitioner's obligation under its agreement had ceased upon that conveyance. . We hold that petitioner is not entitled to credit under section 26(c)(1) by reason of its contract with American respecting dividend payments since such contract ceased to be a restriction prior to the close of the *20 first taxable year here involved. Petitioner further contends that it is entitled to credit under section 26(c)(2) by reason of the modified provision of its trust indenture, in effect through both of the pertinent years, which required it to pay to the trustee, in each year, amounts for sinking fund purposes computed upon the basis of the consolidated net income of petitioner and its subsidiaries for the prior year. The trust provision upon which petitioner relies did not, however, require either that such sinking fund installment be set aside or paid from income of the current year or within the current year. The amounts basing the contested deduction were, in fact, not set aside or paid until the following year. These conditions are identical with those existing in The decision in this case thus concludes petitioner upon its contention that it is entitled to a credit under section 26(c)(2). Decision will be entered for the respondent. Footnotes
1. SEC. 26. CREDITS OF CORPORATIONS. In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax - (c) Contracts Restricting Payment of Dividends. - (1) Prohibition on Payment of Dividends. - An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account. (2) Disposition of Profits of Taxable Year. - An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.↩